# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6876 | **DATE** | 9/29/2003 |
| **CASE TITLE** | Janet Perez vs. JoAnne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#12] is **denied;** Commissioner's Cross-Motion for Summary Judgment [#13] is **granted.** AK

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 3 0 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/29/2003 | 15 |
| | | | date mailed notice | |
| FT/ | courtroom deputy's initials | | FT | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

JANET T. PEREZ,                    )
                                   )
        Plaintiff,                 )   No. 02 C 6876
                                   )
        v.                         )
                                   )
JO ANNE B. BARNHART                )   Magistrate Judge Arlander Keys
Commissioner of Social             )
Security,                          )
                                   )              DOCKETED
        Defendant.                 )
                                      SEP 3 0 2003

---

## MEMORANDUM OPINION AND ORDER

Plaintiff, Janet T. Perez, moves this Court for Summary
Judgment, pursuant to Rule 56(a) of the Federal Rules of Civil
Procedure, to reverse the final decision of the Commissioner of
the Social Security Administration (the "Commissioner") denying
her claim for a Period of Disability and Disability Insurance
Benefits.  See 42 U.S.C. § 405(g) (2003).  The Commissioner has
filed a Cross-Motion for Summary Judgment.  For the reasons set
forth below, the Commissioner's Motion is granted, and
Plaintiff's Motion is denied.

### PROCEDURAL HISTORY

On September 25, 1997, Plaintiff filed an Application for a
Period of Disability and Disability Insurance Benefits
(collectively "DIB").  In her Application, Plaintiff alleged that
she had been disabled since January 17, 1997, due to spinal
stenosis, chronic stomach ulcers, and an abdominal hernia.

15

Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on December 2, 1998. Plaintiff subsequently submitted additional medical evidence to the ALJ. Nevertheless, ALJ Maren Doherty denied Plaintiff's claim for benefits in an amended decision issued on March 4, 1999. Plaintiff appealed ALJ Doherty's determination and, on March 11, 2000, the Appeals Council remanded the matter for a supplemental hearing and further consideration. Following a hearing, ALJ Doherty again denied Plaintiff's claim on September 27, 2000.

Plaintiff filed a timely Request for Review of Hearing Decision/Order, but this time the Appeals Council denied her request, on August 2, 2002. Accordingly, the ALJ's September 27, 2000 decision stands as the final decision of the Commissioner, and is now the subject of the motions before the Court. [1] *See* 42 U.S.C. § 405(g). There is no dispute that Plaintiff was last insured for purposes of DIB on December 31, 1999.

## BACKGROUND FACTS

At the time of the first hearing, Plaintiff was a 63 year old woman, with eleven years of education. (R. at 67.) Plaintiff was not working at the time of either the first or second hearings, but had previously worked a number of jobs, including jobs in the mail room at Data Mart, in the laundry room at the Marriott Church Creek, and as an assembler and packer at

---

[1] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

2

Acco, an office supply company. The evidence before the Court

consists of: 1) Plaintiff's testimony at both hearings before

the ALJ; (2) Plaintiff's daughter's testimony at both hearings;

(3) vocational expert ("VE"), James Radke's testimony at the

first hearing; (5) VE Frank Mendrick's testimony at the second

hearing; (6) the medical evidence presented to the ALJ, and (7)

the ALJ's written opinion.

## A.   Testimony at Hearings

### 1.   Plaintiff's Testimony

At the hearing, Plaintiff testified that she last worked on

January 17, 1997, in the mail room at Data Mart. She explained

that she quit her job because of pain, burning sensations in her

legs, and a hernia. Plaintiff testified that she is unable to

walk for more than a block without her legs burning. The pain

requires her to sit for approximately 15 minutes before walking

again. Plaintiff testified that she has difficulty ambulating.

She testified that, while working at Data Mart, she found herself

walking sideways, which would periodically cause her to trip.

Plaintiff also testified that she experiences difficulty

when standing and sitting, and that she is unable to sit through

a 30 minute TV show without getting up two to three times.

Plaintiff testified that, when standing, she needs to lean on

something, such as a wall, to relieve the pressure on her back.

3

She testified that her pain exists primarily in the lower part of her back, hips, and legs, particularly her left leg. Although she primarily experiences the pain at the top of her leg, the pain also radiates down to her ankle. Plaintiff explained that the pain in her back and hips is always present, but the pain in her legs generally comes on when she stands or walks. She limits herself to going up or down stairs to two to three times each day. The trip up the stairs causes so much pain and pressure on her back that she crawls.

In addition to the pain in her back and lower extremeties, Plaintiff testified that she suffers from painful hernias. She testified that she has to keep something solid on the hernia, which prevents her from reaching in any direction. Plaintiff rated her pain as a nine on a ten point scale. Plaintiff testified that her hernias interferes with bending, stretching, and bathing. Plaintiff underwent surgery to have the hernias removed while she was working for Western Electric. When the hernias subsequently returned, Plaintiff was unable to undergo surgery to have them removed, because she did not have adequate insurance.

Plaintiff testified that she also has uclers, which bother her all of the time. Plaintiff testified that she takes Prilosec for her ulcers and another medication for a thyroid condition. Because of her ulcers, Plaintiff claims, she is not able to take

4

any medication for her back, hip, and leg pain, except Tylenol. In addition, Plaintiff testified that one of her physicians told her that she suffers from progressive arthritis.

Plaintiff provided details about her extensive employment history. From approximately 1995 to January 17, 1997, Plaintiff worked at Data Mart. Plaintiff stated that she worked in Data Mart's mail room, stuffing envelopes, and carrying the mail on trays to tables. Plaintiff was required to lift the trays, which weighed between 50 and 60 pounds, on an almost hourly basis.

In the early 1990's, Plaintiff worked in the laundry room at Marriott Church Creek. This position required Plaintiff to pick up dirty clothes from each of the facility's floors, and to take them to the laundry room, via elevator, in a large bin. Plaintiff explained that she performed her duties while standing, and that she frequently had to lift between 25 to 30 pounds.

Prior to joining Marriott, Plaintiff worked on an assembly line at Acco, an office supply company, as an assembler and packer. This job required her to stand most of the day and to lift between 25 and 50 pounds. Plaintiff testified that she had also worked at Western Electric, as a wirer and solderer, and various other jobs, generally on an assembly line.

At the supplemental hearing, held on May 16, 2000, Plaintiff reiterated much of her prior testimony regarding her work history. Plaintiff explained that she was currently ambulating

with a wheeled walker and had been doing so for the past 2 ½
months, because she was losing control of her legs.  Plaintiff
also testified that she had been in a car accident on September
22, 1998.  Since the accident, Plaintiff has had difficulty using
her arms and, primarily, her right dominant hand.  Plaintiff
testified that her fingers would sometimes curl up and would
become locked in place, which was painful.

In addition, Plaintiff testified that she becomes dizzy when
bending over and becomes spatially disoriented when walking.  She
testified that Dr. Zamirowsi prescribed thyroid medication.
Plaintiff testified that she has a burning sensation in her hips
when she walks, which is accompanied by a sharp pain.  Plaintiff
has difficulty sitting down and getting up.  Plaintiff testified
that, although she has new glasses, her eyes burn and water when
she reads and she has difficulty seeing at night.  She was told
that she is developing cataracts.

### 2.  Alice Jasser's Testimony

Plaintiff's daughter, Alice Jasser, also testified at
Plaintiff's first hearing.  Ms. Jasser testified that Plaintiff
was not able to cook for herself, do laundry, or drive. Ms.
Jasser claimed that Plaintiff would have to sit after walking
just one block.  Although Plaintiff accompanied Ms. Jasser on
shopping trips, Ms. Jasser explained that Plaintiff would sit in
the front of the store while she shopped.

Ms. Jasser also helped to illuminate Plaintiff's work history. She explained that, from approximately 1975 until 1980, Plaintiff had a job wiring PC boards. Ms. Jasser confirmed that her mother worked at Marriott Senior Living Services, in the laundry department. Ms. Jasser testified that Plaintiff also worked at Melmo Graphics, and Ultimated, Inc., as a collator, and held a part-time job at Montgomery Wards.

At the supplemental hearing, Ms. Jasser claimed that Plaintiff was even more impaired than Plaintiff had let on in her testimony. Ms. Jasser testified that Plaintiff's eyesight was worse than Plaintiff had implied, and that Plaintiff could walk less than one block. Ms. Jasser explained that Plaintiff's doctor had informed her that Plaintiff had two spurs in the back of her neck that affected her ability to move and interfered with her blood circulation, which caused Plaintiff's dizziness. Ms. Jasser also noted that she noticed her mother's hand would cramp up from time to time.

### 3. VE James Radke

Mr. Radke testified at Plaintiff's first hearing. With regard to Plaintiff's work history, Mr. Radke noted that Plaintiff's previous employment performing soldering work did not constitute past relevant work experience, as she had performed the work over 15 years ago. Plaintiff's positions at Acco, Marriott Nursing Homes, and Data Mart were unskilled and between

the light and medium levels. The assembly positions was light, and the laundry job was medium. Although the collating job is generally defined as light by the Dictionary of Occupational Titles ("DOT"), it was medium as Plaintiff performed it. Mr. Radke further explained that most collating jobs did not require more than incidental walking and would allow for a sit/stand option. However, such positions typically required frequent bending, approximately 20 degrees, if done while standing.

### 4. VE Frank Mendrick

At the second hearing, the ALJ posed two hypotheticals to Mr. Mendrick with respect to Plaintiff's past work. The ALJ asked the VE to identify whether jobs existed for a person aged 62-65, with an 11th grade education, with work experience similar to Plaintiff's experience, with the ability to lift up to 20 pounds occasionally, 10 pounds frequently, to stand or sit as required but only walk incidentally, and then for distances under 200 feet, but could not climb ladders or stairs, and could stoop only occasionally. Mr. Mendrick responded that approximately 1,400 mail clerk positions existed locally, and were sedentary, permitting the employee to sit for a full eight hours. Mr. Mendrick further explained that the mail clerk position, as Plaintiff previously performed it, would be classified as light.

Mr. Mendrick testified that the person described in the ALJ's hypothetical could also perform light collating jobs, and

that approximately 1,500 such positions existed in the
Chicagoland area.  Finally, Mr. Mendrick opined that Plaintiff
could likely perform wiring jobs with PC boards, but Plaintiff
had previously performed this job at the sedentary level, and it
is typically performed at the light level in the economy.

The ALJ then posed a second hypothetical to Mr. Mendrick,
including the additional limitations of no pushing or pulling
with her arms and legs, no overhead reaching, and no performance
of a job that required her to look up or extend her neck back.
Mr. Mendrick responded that the collating work could still be
done, as well as the wiring of the PC board.  If this same
hypothetical person's ability to do repetitive fingering were
restricted, however, all of the positions would be eliminated.
Similarly, when Plaintiff's counsel asked Mr. Mendrick if
difficulty seeing fine printed detail for a portion of a whole
day would affect the availability of the jobs mentioned, Mr.
Mendrick replied that this restriction would eliminate all of the
suggested jobs.

**B.  Medical Evidence**

### 1.  Dr. Zamirowski – Treating Physician

Plaintiff first saw Dr. Thaddeus Zamirowski in April of
1995.  On August 20, 1997, Plaintiff saw Dr. Zamirowski,
complaining of an abdominal hernia[2], leg numbness, a history of

---

[2]  Plaintiff had undergone surgery to repair an umbilical
hernia, as well as an epigastric ventral hernia on June 12, 1996,

9

ulcers, and thigh pain, which Dr. Zamirowski opined was vascular claudication. Two weeks later, Plaintiff underwent Doppler testing, which indicated possible minimal obstructive disease of the right anterior tibial artery. Dr. Zamirowski indicated that Plaintiff needed a computerized tomography scan ("CT scan") of her lumbosacral spine.

On September 23, 1997, Plaintiff met with Dr. Zamirowski to review the results of Plaintiff's Doppler testing. Dr. Zamirowski indicated that Plaintiff's Doppler study had been negative, and that her thigh pain might be caused by spinal stenosis with nerve claudication.

Dr. Zamirowski completed a Report of Incapacity for the Illinois Department of Public Aid on October 24, 1997. In the report, Dr. Zamirowski opined that Plaintiff was not restricted with respect to sitting, standing, finger dexterity, and fine and gross manipulations. However, Dr. Zamirowski found that Plaintiff had a 20% reduced capacity for turning, a 20% to 50% reduced capacity for bending, stooping, climbing, pushing and pulling, and more than a 50% reduced capacity for walking. Dr. Zamirowski indicated that Plaintiff could lift up to ten pounds repeatedly during an eight hour work day. Dr. Zamirowski further indicated that Plaintiff was disabled due to her combination of impairments.

---

but was purportedly suffering a reoccurrence.

On October 29, 1997, Dr. Zamirowski indicated that Plaintiff had classic claudication symptoms, and that, given her negative Doppler study, spinal claudication was the only possible explanation.

Plaintiff returned to Dr. Zamirowski on May 5, 1998, complaining of a sore throat. The following month, Plaintiff reported frequent dizzy spells and increased lumbar discomfort and leg pain. On August 13, 1998, Plaintiff complained of low back pain and vertigo.

### 2. Dr. Stephen Epner

At the request of the state disability examiners, Plaintiff met with Dr. Stephen Epner on December 8, 1997, for a consultative physical examination. Plaintiff reported that her major concerns were spinal stenosis and numbness and weakness of the legs. Plaintiff complained of a burning sensation in her thighs after walking or prolonged standing, peptic ulcer disease, and two abdominal hernias. Dr. Epner noted that Plaintiff walked with a slight limp and somewhat stiffly, without an assistive device.

Dr. Epner noted that Plaintiff's back was normal, that Plaintiff had normal strength, and a normal range of motion in her hands, wrists, elbows, shoulders, cervical spine, and ankles. Dr. Epner concluded that Plaintiff's range of motion in her lumbar spine, hips, and knees was decreased. An x-ray of

11

Plaintiff's lumbar spine showed some degenerative changes, with mild osteoporosis. Plaintiff's deep tendon reflexes were symmetrical in her arms, knees, and ankles, and there was no loss of sensation in her lower extremities. Dr. Epner diagnosed Plaintiff with spinal stenosis, a history of peptic ulcer disease, and a history of abdominal ulcers.

### 3. Dr. Jose Gonzalez, Dr. E.C. Bones, and Dr. James Bianchin - Agency Physicians

Dr. Gonzalez completed a Residual Functional Capacity ("RFC") Assessment for Plaintiff on December 18, 1997. Dr. Gonzalez opined that Plaintiff could perform light work, with occasional climbing, stooping, kneeling, crouching, and crawling. Dr. E.C. Bone affirmed Dr. Gonzalez's assessment on April 13, 1998.

Dr. Bianchin agreed with Drs. Gonzalez and Bone's assessments. Dr. Bianchin noted that Plaintiff's complaints of claudication were not "objectively supported."

### 4. Dr. Benjamin Toh- Agency Physician

On April 3, 1998, Plaintiff met with Dr. Toh at the request of the state disability examiners, for a consultative physical examination. Plaintiff complained of lower back, left leg, and heel pain, which prevented her from walking and affected her ability to perform some of her daily activities. Dr. Toh noted that Plaintiff was not taking any medications for her pain.

Plaintiff informed Dr. Toh that she was not presently under a doctor's care, because she did not have any insurance.

Dr. Toh found that Plaintiff had a normal range of cervical and lumbar motion, and a normal range of motion in her shoulders, elbows, wrists, fingers, hips, knees, and ankles. Upon examination of Plaintiff's abdomen, Dr. Toh found no visible or palpable hernia. A straight leg raising test was negative.

Plaintiff could grasp and manipulate objects normally, and could walk fifty feet without assistance. Plaintiff had a normal gate, but was clumsy when tandem walking, or when walking on her heels and toes. Plaintiff's lumbosacral flexion was 90%, with some back discomfort. Her reflexes were equal and symmetrical.

Dr. Toh diagnosed back pain, and a history of thyroid problems, hernia, and peptic ulcer disease.

## C. The ALJ's Opinion

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Regulations, first noting that Plaintiff was not presently employed. The ALJ found that the medical evidence supports the finding that, on or before December 31, 1999 (Plaintiff's date last insured) Plaintiff had degenerative disc disease of the lumbar and cervical spine, and had a history of hernia repair. The ALJ determined that these impairments, while sufficiently severe to proceed with her analysis of Plaintiff's

claim, did not meet or equal the requirements of any of the Listing of Impairments.

The ALJ found that Plaintiff's claims regarding her stomach ulcers were not supported by any medical evidence. ALJ Doherty noted that Plaintiff failed to complain to any doctor about this condition. Similarly, ALJ Doherty found that, while Plaintiff complained to her primary physician about a hernia, which had been removed two months earlier in June 1996, her primary physician did not further investigate Plaintiff's complaints of hernia pain and no doctor subsequently found or diagnosed a hernia. Therefore, the ALJ found that Plaintiff did not have a medically determinable hernia or hernias[3].

The ALJ also rejected Plaintiff's claim that she was disabled due, at least in part, to nerve claudication caused by spinal stenosis. The ALJ acknowledged that Plaintiff's treating physician, Dr. Zamirowski, concluded that Plaintiff had nerve claudication caused by spinal stenosis, after a peripheral vascular disease work-up had ruled out leg claudication. Dr. Zamirowski recommended a CT scan of her spine to confirm the nerve claudication, but Plaintiff did not undergo the recommended CT scan. Therefore, nerve claudication caused by spinal stenosis

---

[3] The ALJ noted that, even if a hernia(s) were present, she would not impose greater limitations on Plaintiff's residual functional capacity ("RFC") than otherwise found by the ALJ.

was never confirmed.  In addition, lumbar x-rays failed to document the existence of spinal stenosis.

The ALJ's opinion then set forth Plaintiff's RFC, concluding that Plaintiff was limited to lifting no more than 20 pounds occasionally or 10 pounds frequently, walking no more than incidentally and then for short distances of under 200 feet, not climbing ladders or stairs, and no more than occasional stooping. In reaching the RFC conclusion, the ALJ cited to Dr. Epner and Dr. Toh's examinations and reports.

The ALJ acknowledged that her RFC determination did not incorporate Dr. Zamirowski's 10 pound lifting restriction.  In discussing her decision not to give controlling weight to the report of Dr. Zamirowski, Plaintiff's treating physician, the ALJ noted that Dr. Zamirowski's treatment notes only recited Plaintiff's symptoms and failed to document the nature or results of his examinations.  The ALJ also considered the fact that Plaintiff had seen Dr Zamirowski only four times in three years. More importantly, the ALJ noted that Dr. Zamirowski tied his lifting restriction to the presence of Plaintiff's hernia – not her back condition – even though a hernia was never found after her hernia repair operation in 1996.

In addition, the ALJ refused to consider an undated and unsigned Physical Capacities Evaluation Form, which restricted Plaintiff to sitting, standing, and walking for less than one

hour in an eight hour day.  This form further restricted Plaintiff's ability to lift with her right hand, indicating that the form took into account symptoms beyond the disability period in question, as Plaintiff did not complain of having hand problems prior to April 26, 2000.  Similarly, the ALJ rejected the interrogatories completed by Dr. Zamirowski on April 26, 2000, because the interrogatories reflect complaints the Plaintiff raised for the first time in April of 2000, which is outside the period under consideration.

The ALJ also discussed Plaintiff's and her daughter's testimony.  The ALJ commented on Plaintiff's infrequent medical treatment and the fact that she was not taking prescription pain medication, despite her claims of disabling pain.  The ALJ acknowledged that Plaintiff testified that she had no insurance and no money, but noted that there is no evidence that Plaintiff pursued low income health care options available to her. Specifically, the ALJ noted that, even though Plaintiff was told that an important CT scan could be done without insurance at Cook County Hospital, Plaintiff refused to have the scan performed. The ALJ opined that Plaintiff's lack of treatment, and the fact that she took only one Tylenol a few times each week contradicted Plaintiff's claim of significant pain.  In addition, the ALJ found that Plaintiff's testimony regarding her daily activities was inconsistent with her complaints of disabling pain.

The ALJ acknowledged that Plaintiff's daughter's testimony was generally corroborative of Plaintiff's allegations, but found that the testimony was likely influenced by her desire to help her mother.

The ALJ then discussed the testimony of the vocational experts, and concluded that, even considering the Plaintiff's limitations, Plaintiff could perform her past relevant work as a mail clerk, hand collator, and wire worker. Therefore, the ALJ concluded, Plaintiff was not disabled on or before December 31, 1999.

## STANDARD OF REVIEW

The Court must uphold the ALJ's decision if it is based on the correct legal standards and is supported by substantial evidence. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the evidence does not support the ALJ's decision, the case must be remanded to the Commissioner. *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

"The court may reverse the Commissioner's decision only if the evidence compels reversal, not merely because the evidence supports a contrary decision." *Robinson v. Barnhart,* 233 F.

Supp. 2d 1030, 1032 (N.D.Ill. 2002) (quoting *INS v. Elias-Zacarias,* 502 U.S. 478, 481 n.1 (1992)).  If reasonable minds could disagree about whether the Plaintiff is disabled, the Court must affirm the ALJ's decision.  *Schmidt,* 201 F.3d at 972.  Further, the Court may not substitute its judgment for that of the ALJ by reevaluating facts, reweighing evidence, resolving conflicting evidence, or making credibility determinations.  *Estok v. Apfel,* 152 F.3d 636. 638 (7th Cir. 1998).  While deferential, this standard of review is not an uncritical rubber stamp.  *Schroeter v. Sullivan,* 977 F.2d 391, 394 (7th Cir. 1992).

Moreover, the ALJ is not required to evaluate in writing every piece of evidence or testimony in the record.  *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994).  Rather, the ALJ's opinion must "build an accurate and logical bridge between the evidence and the result."  *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000) (quoting *Sarchet v. Chater,* 78 F. 3d 305, 307 (7th Cir. 1996)).  An ALJ need only minimally articulate his reasoning, but a failure to consider an entire line of evidence falls below the required minimum.  *Lopez v. Barnhart,* 336 F.3d 535, 540(7th Cir. 2003)(case remanded because the ALJ ignored available evidence and failed to explain his conclusion of not disabled).

## SOCIAL SECURITY REGULATIONS

The Social Security Regulations (the "Regulations")
prescribe a five-step sequential analysis to determine whether a
claimant is disabled. 20 C.F.R. § 416.920(a)-(f). The ALJ must
consider whether the claimant: (1) is presently unemployed; (2)
has a severe impairment or combination of impairments; (3) has an
impairment that meets or medically equals any impairment listed
in the Regulations as being so severe as to preclude gainful
activity; (4) is unable to perform her past relevant work; and
(5) is unable to perform any other work existing in significant
numbers in the national economy. *Young v. Sec'y of Health &*
*Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. §
404.1520 (2003). A negative answer at any step other than step
three precludes a finding of disability. *Young,* 957 F.2d at 389.
The Plaintiff has the burden of proof at steps one to four. *Id.;*
*Balenton v. Halter*, 156 F. Supp. 2d 776, 782 (N.D.Ill. 2001). If
the claimant's burden is met, the burden shifts to the
Commissioner at step five to show that the claimant has the
ability to engage in other work existing in significant numbers
in the national economy. *Young,* 957 F.2d at 389; *Balenton,* 156
F. Supp. 2d at 782.

## DISCUSSION

Having set forth the standards that guide this review, the
Court now turns to Plaintiff's claims of error. Plaintiff

19

alleges that the ALJ erred when he found Plaintiff "not disabled" because the ALJ failed to: 1)consider that Plaintiff also suffers from a thyroid disorder and was prescribed Synthroid; and 2)the ALJ improperly determined that Plaintiff could perform her past relevant work.

In her reply brief, Plaintiff argued for the first time that the ALJ improperly discredited her daughter's testimony[4]. Similarly, Plaintiff reserved for her reply brief her argument that the ALJ failed to consider manipulative restrictions upon the jobs cited[5]. Plaintiff's failure to raise these arguments in her opening brief results in waiver. *McCullough v. Apfel,* No. 98-

---

[4] The ALJ's decision noted that Ms. Jasser's testimony was "generally corroborative" of Plaintiff's testimony, but may have been influenced by a "desire to help" her mother. R. at p. 17. Initially, the Court notes that the ALJ was not required to analyze Ms. Jasser's testimony at all. *See Books v. Chater,* 91 F.3d 972, 980 (7th Cir. 1996) (to the extent the ALJ found the claimant's testimony incredible, the court could infer that corroborating testimony was similarly incredible); *Carlson v. Shalala*, 999 F.2d 180, 182 (7th Cir. 1993) (ALJ need not expressly analyze corroborative/redundant testimony). In addition, the ALJ's observation appears to be warranted. For example, Ms. Jasser testified that Plaintiff's account of her condition was inaccurate, because Plaintiff exaggerated her abilities and minimized the impact of her symptoms and pain. *See, e.g.,* R. at p. 48, 5/16/00 Hearing Trans. at p. 25. At Plaintiff's prior hearing, Ms. Jasser interrupted Plaintiff's testimony to list additional medical impairments that purportedly caused Plaintiff to leave her job –suggesting that Plaintiff was insufficiently familiar with the reasons for her departure. *See* R. at p. 72, 12/2/98 Hearing Trans. at p. 12.

[5] Importantly, the ALJ notes in her decision that the evidence concerning Plaintiff's manipulative restrictions arises exclusively outside the period of disability, and would not be relevant to her disability determination.

20-CH/G, 2000 WL 684233, at *7 (S.D. Ind. Mar. 6, 2000). "A plaintiff cannot raise new grounds for remand for the first time in a reply brief, when the Commissioner no longer has an opportunity to respond to it." *Id.* citing *Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 668 (7th Cir. 1998). *See also Swanson v. Apfel,* No. IP 99-1159-C H/G, 2000 WL 1206587 (S.D. Ind. Aug. 7, 2000) (rejecting as waived Plaintiff's arguments for remand of the Commissioner's decision, because they were raised for the first time in her reply brief.) The Court will address only Plaintiff's properly presented arguments.

**A. The ALJ's failure to consider Plaintiff's thyroid disorder.**

Plaintiff claims that the ALJ's failure to determine that Plaintiff suffered from a thyroid disorder resulted in the ALJ's improperly determining that Plaintiff's complaints of pain lacked credibility and improperly rejecting the opinion of Dr. Zamirowski. Plaintiff is incorrect on both fronts.

First, the ALJ discounted Plaintiff's complaints of pain based upon three factors: 1) her lack of medical treatment; 2) the fact that she was not taking any pain medication; and 3) her description of her daily activities. These are all permissible factors for the ALJ to consider in evaluating credibility. *See, e.g., Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000); *Caldarulo v. Bowen*, 857 F.2d 410, 413 (7th Cir. 1988) (failure to seek medical attention and low dosage of pain medication cast

21

doubt upon the seriousness of the claimant's ailments.) The ALJ did not discount Plaintiff's testimony because she did not suffer from a severe impairment – to the contrary, the ALJ found that Plaintiff suffered from degenerative disc disease of the lumbar and cervical spine, and had a history of hernia repair, which were all severe impairments. Thus, the ALJ's failure to identify whether Plaintiff's thyroid condition was a severe impairment did not prevent the ALJ from proceeding with the sequential analysis, and did not influence the ALJ's decision to discount Plaintiff's testimony. *Maziarz v. Secretary of Health and Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987) (ALJ's failure to label one of the claimant's ailments severe was not reversible error, because the ALJ found other sever impairments and continued with the Regulations' sequential evaluation of the claim.)

Similarly, the ALJ discounted the reliability of the medical evidence provided by Dr. Zamirowski because: 1) his medical records primarily recorded Plaintiff's complaints of pain and conclusions, without discussing his evaluation or test results; 2) Dr. Zamirowski treated Plaintiff only four times in three years; 3) Dr. Zamirowski's most recent submissions relied upon ailments and complaints that Plaintiff did not raise with him until after the expiration of her insured status; and 4) interrogatories completed by Dr. Zamirowski, in which he opined that Plaintiff was incapable of even sedentary work, were

completed two months after Plaintiff stated that her condition had substantially deteriorated and related to a period of time outside of the period under consideration. Plaintiff fails to articulate how her thyroid condition impacted, or would have altered this analysis.

Importantly, Plaintiff has not introduced any evidence that her thyroid disorder caused any functional limitations. Although Plaintiff's Motion for Summmary Judgment insinuates that her thyroid disorder may have caused blurry vision and tearing, at the hearing before the ALJ, she claimed that her vision difficulties were caused by cataracts and that, at the time of the hearing (which was beyond the disability period under consideration), she was just developing cataracts. R. at pp. 43-44. Therefore, the Court rejects Plaintiff's claim that the ALJ's failure to label her thyroid condition a severe impairment constitutes reversible error.

**B.  The ALJ erred in determining that Plaintiff could return to her past relevant work.**

### 1.  The ALJ's RFC Permits the Full Range of Sedentary Work

The Plaintiff mounts several attacks against the ALJ's determination that she could return to her past relevant work under step 4 of the sequential analysis. Analysis of these arguments is complicated by the Plaintiff's misrepresentation, perhaps accidently, of the ALJ's RFC. On page 13 of her brief, Plaintiff claims that the ALJ erred in finding that Plaintiff

could return to her former wiring job, because that job required the full range of sedentary exertion as generally performed and as she performed it, but the "RFC reflects . . . a sit/stand option," which is inconsistent with the full range of sedentary work. Pl.'s Brief at p. 13. Plaintiff is incorrect; the ALJ's RFC does not "reflect" a sit/stand option[6].

Plaintiff muddies the waters even further by claiming that the ALJ's RFC was for less than the full range of light and sedentary work, because "the RFC reflects not only a sit/stand option, but ability to walk only *incidentally*." *Id.* (emphasis added). As mentioned above, the RFC does not include a sit/stand option. Therefore, Plaintiff's claim that the inclusion of this option mandates a finding of a limited sedentary exertional capability is unfounded.

Similarly, the Court finds that the ALJ's use of the term "incidentally," as opposed to SSR 96-9P's use of the term "occasionally", is not so vague as to convert the ALJ's RFC from a finding that Plaintiff is capable of a limited range of light work and the full range of sedentary work, to a finding that Plaintiff is not even capable of the full range of sedentary work. In her decision, the ALJ notes that Plaintiff testified at the hearing that she could walk approximately 20 minutes at a

---

[6] Plaintiff acknowledges as much earlier in her brief, when she challenges the ALJ's reliance upon the VE's testimony, which considered a sit/stand option, whereas the ALJ's ultimate RFC did not include a sit/stand option. *See* Pl.'s Brief at p. 10.

24

time before experiencing burning in her legs.  R. at p. 17.

There is no evidence in the record suggesting that Plaintiff was

restricted to walking only once during an eight hour day.  Both

the term incidentally and the term occasionally imply that the

claimant is able to walk "very little . . . no more than 2 hours

out of an 8 hour work day."  SSR 96-9P[7].

Finally, Plaintiff contends that, because her RFC permits

neither the full range of light nor sedentary work, SSR 83-12

mandates a finding of disability.  But there is no support in the

record for Plaintiff's claim that she is not capable of the full

range of sedentary work.  Instead, Plaintiff's RFC falls between

the light and sedentary ranges of exertion.  When a claimant

falls in between two Grids, the ALJ is required to consult a VE

before making his determination.  *See Moore v. Apfel,* 216 F.3d

864, 869 (9th Cir. 2000).  Although SSR 83-12 directs that the

ALJ consult a VE in such cases – which ALJ Dougherty did – the

Regulation does not require a finding of disabled.  *Id.* at 869–

71.  Having resolved this confusion, the Court turns to

Plaintiff's attacks on the ALJ's Step 4 finding.

---

[7]  Oddly, Plaintiff states that in the event a claimant is
"able to stand and walk in between the slightly less than 2 hours
and only a few minutes, it may be appropriate to consult a
vocational resource."  Pl.'s Brief at p. 13.  This assertion is
odd because 1) the evidence does not suggest that Plaintiff could
not stand for close to 2 hours in an 8 hour work day; and 2) the
ALJ did consult a vocational resource – the VE.

## 2. The Overinclusive Hypothetical

Plaintiff argues that the ALJ's decision is not supported by substantial evidence, because the hypothetical question she propounded to the VE included a sit/stand option, whereas the ALJ's ultimate RFC finding did not include this restriction. As discussed above, the ALJ's ultimate RFC did not include a sit/stand option, but it was not reversible error for the ALJ to have, nevertheless, relied upon the VE's testimony. The Court finds that such reliance is not reversible error where the hypothetical question posed to the VE was more restrictive than the limitations the ALJ ultimately assigned to the claimant. *See generally Reynolds v. Bowen*, 844 F.2d 451, 455 (7th Cir. 1988). The VE's testimony is not rendered unreliable simply because the Plaintiff did not, in the ALJ's opinion, require accommodation of a limitation – ie, the sit/stand option – that was considered by the VE. The pool of available jobs would expand, not shrink, for a claimant with fewer restrictions. Therefore, the Court rejects Plaintiff's challenge.

## 3. Plaintiff's Former Mail Clerk Position

Plaintiff also argues that the ALJ improperly relied upon the VE's testimony, because the VE testified that the hypothetical claimant could perform Plaintiff's former mail clerk position – not at the light level of exertion at which Plaintiff performed it, but at the sedentary level of exertion. The VE

26

further testified that there were 1,400 such jobs at the sedentary level of exertion, and the ALJ relied upon this testimony in determining that Plaintiff was not disabled at Step 4 of the sequential analysis. Plaintiff claims that such a finding is not appropriate at Step 4, because "whether there were other sedentary jobs she would be able to do was irrelevant and only appropriate at the 5th step," and because "there was no testimony that any [of Plaintiff's] past job[s] was less than the full range at either [the light or sedentary] level of exertion." Pl.'s brief at p. 10.

Of course, the ALJ is not limited to considering whether Plaintiff can return to her past relevant work only as she performed it at Step 4; rather, the ALJ may also consider whether Plaintiff can return to her past relevant work as it is generally performed in the national economy. SSR 82-62. However, an ALJ may not consider, at Step 4, that, based upon a claimant's former experience, that claimant can perform a host of generalized positions. Plaintiff is correct that such a finding is more properly made at Step 5.

Notably, the VE found that one of Plaintiff's former collator positions would be more properly called a mail clerk position. The VE pointed out that two of Plaintiff's other former positions would still be characterized as a collator position. Thus, to the extent that Plaintiff is arguing that the

27

VE improperly considered whether Plaintiff could return to a generalized position, as opposed to her former position as it is generally performed in the national economy, she is incorrect. The VE properly determined that she could perform her past relevant work – which Plaintiff and/or her employer had improperly (at least for purposes of comparison) labeled collating – as a mail clerk at the sedentary level.

Plaintiff is correct, however, that the mail clerk position is generally performed at the light unskilled level, medium as Plaintiff performed it, and that the VE testified that Plaintiff could perform the mail clerk position only at the sedentary level. The Commissioner concedes that a Step Four finding based upon this job is not appropriate. However, the Commissioner argues that the ALJ's ultimate determination must stand, because the ALJ correctly concluded that Plaintiff could return to her past relevant work as a collator and a wire worker.

### 4. The VE's Testimony Can Conflict with DOT Definitions

At the hearing, the VE testified that the collator and wire worker jobs, as generally performed, allow for less than the full range of light exertion, and that Plaintiff would be able to perform these jobs as they are generally performed in the national economy. Specifically, the VE testified that these jobs are rated on a 50 minute hour, and typically allow workers approximately 10 minutes every hour to "take a stretch." R. at

28

p. 58; Trans. of 5-16-2000 Hearing at p.35. Plaintiff
acknowledges this testimony, but challenges its reliability,
because the Dictionary of Occupational titles ("DOT") designates
both of these jobs as light level jobs.

The Seventh Circuit explained in *Donahue v. Barnhart*, that
an ALJ is free to rely upon a VE's testimony, even if that
testimony conflicts with the Dictionary of Occupational Titles'
("DOT") description.  279 F.3d 441, 445-46 (7th Cir. 2002) ("it
is understood that some individual jobs may require somewhat more
or less exertion than the DOT description.") If the represented
claimant wishes to challenge any discrepancy between the DOT and
the VE's testimony, the claimant's attorney has the opportunity
to do so via cross-examination.  The burden then shifts to the
ALJ to resolve the discrepancy.  *Id.* at 446-47.  The ALJ is not
required to reopen the case, however, if the represented claimant
fails to identify the discrepancy at the hearing.  *Id.* Rather,
the ALJ is entitled to accept or reject the VE's testimony as she
sees fit in the event the discrepany is not identified by the
claimant at the hearing.

In this case, Plaintiff, who was represented by counsel, did
not challenge the VE's testimony regarding the collator and wire
worker positions at the hearing.  Therefore, the Court rejects
Plaintiff's argument that the ALJ's reliance upon this testimony
was improper.

## 5. Plaintiff's Wire Worker Position.

Finally, Plaintiff contends that the ALJ erred in finding that Plaintiff could return to her past relevant work as a wire worker, as the position is generally performed in the national economy. Plaintiff notes the conflicting evidence regarding when she performed this work, and VE Radke's testimony that the wiring job was outside the 15 year durational period, and thus could not be classified as past relevant work.

Initially, the Court notes that there was ample evidence that the wire worker position was performed within the 15 year durational period, and that the burden at Step 4 rested with Plaintiff to establish that position was not eligible for consideration. At the May 16, 2000 hearing, counsel for Plaintiff raised the issue that it was unclear when Plaintiff had performed the wiring position, and VE Mendrick replied that Plaintiff's written submissions indicated that the wiring position was performed within the 15 year eligibility window. Plaintiff's counsel then conceded that was "Okay, fine. I didn't — I hadn't — didn't remember. Whatever she put down is [sic] is probably more accurate than what she can remember now anyway." R. at p. 59, 5-16-2000 Hearing Trans. at p. 36.

More importantly, however, the Commissioner is correct in noting that the evidence indicates that the collator position fell within the 15 year durational period, and that the ALJ's

inclusion of the wire worker position in the category of available past relevant work was, at most, harmless error. Therefore, the Court rejects Plaintiff's contention that the error requires remand. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")

### CONCLUSION

For the reasons set forth above, the Court finds that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence. Although Plaintiff has identified errors in the ALJ's decision, these errors do not compel the Court to remand Plaintiff's claim back to the Social Security Administration.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment be, and the same hereby is, DENIED. IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment be, and the same hereby is, GRANTED.

DATED: September 29, 2003    E N T E R:


ARLANDER KEYS
United States Magistrate Judge

31